IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
*(Write the District and Division, if any, of the*
*court in which the complaint is filed.)*

FILED by _P6_ D.C.

JUL 3 1 2017

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

**NORBERTO IGLESIAS,**
*(Write the full name of each plaintiff who is filing*
*this complaint. If the names of all the plaintiffs*
*cannot fit in the space above, please write "see*
*attached" in the space and attach an additional*
*page with the full list of names.)*

**-against-**

**JULIE JONES**, Sec. F.D.C.
**WARDEN ACOSTA,**
**ASSISTANT WARDEN SCOTT,**
**CORRECTIONAL OFFICER MESA,**
**CORRECTIONAL SERGEANT BETHEL,**
**CORRECTIONAL SERGEANT FLETCHER,**
**INSPECTOR RIOS,**
**INSPECTOR JOE MONTENEGRO,**
*(Write the full name of each defendant who is*
*being sued. If the names of all the defendants*
*cannot fit in the space above, please write "see*
*attached" in the space and attach an additional*
*page with the full list of names. Do not include*
*addresses here.)*

**AMENDED**
**Complaint for Violation of Civil**
**Rights**
(Prisoner Complaint)

Case No. 1:17-cv-21554-CMA
*(to be filed in by the Clerk's Office)*

Jury Trial: ☒ Yes ☐ No
*(check one)*

PROVIDED TO
CENTURY CI

JUL 2̶5 201̶7

FOR MAILING___
RECEIVED BY___

---

NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievances or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in *forma pauperis*.

## I.   The Parties to this Complaint

**A.   The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name **Norberto Iglesias**

All other names by which you have been known:

_____

_____

ID Number **K01091**

Current Institution **Century Correctional Institution**
**400 Tedder Road**
**Century, Florida 32535**

**B.   The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | **Julie Jones, Secretary F.D.C.** |
| Job or Title (if known) | **Florida Department of Corrections Secretary** |
| Shield Number | **Unknown** |
| Employer | **Florida Department of Corrections** |
| Address | **501 South Calhoun Street** |
| | **Tallahassee, Florida 32399** |

☒ Individual Capacity     ☐ Official Capacity

**Defendant No. 2**

| | |
|---|---|
| Name | **Warden Acosta** |
| Job or Title (if known) | **Warden, Everglades Correctional Institution** |
| Shield Number | **Unknown** |
| Employer | **Florida Department of Corrections** |
| Address | **1599 S.W. 187th Avenue** |

**Miami, Florida 33194**

☒ Individual Capacity       ☐ Official Capacity

**Defendant No. 3**

| | |
|---|---|
| Name | **Assistant Warden Scott** |
| Job or Title | **Assistant Warden, Everglades Correctional Institution** |
| (if known) | |
| Shield Number | **Unknown** |
| Employer | **Florida Department of Corrections** |
| Address | **1599 S.W. 187th Avenue** |
| | **Miami, Florida 33194** |

☒ Individual Capacity       ☐ Official Capacity

**Defendant No. 4**

| | |
|---|---|
| Name | **Correctional Officer Mesa** |
| Job or Title | **Correctional Officer, Everglades Correctional Institution** |
| (if known) | |
| Shield Number | **Unknown** |
| Employer | **Florida Department of Corrections** |
| Address | **1599 S.W. 187th Avenue** |
| | **Miami, Florida 33194** |

☒ Individual Capacity       ☐ Official Capacity

**Defendant No. 5**

| | |
|---|---|
| Name | **Correctional Sergeant Bethel** |
| Job or Title | **Correctional Sergeant, Everglades Correctional Institution** |
| (if known) | |
| Shield Number | **Unknown** |
| Employer | **Florida Department of Corrections** |
| Address | **1599 S.W. 187th Avenue** |
| | **Miami, Florida 33194** |

☒ Individual Capacity       ☐ Official Capacity

**Defendant No. 6**

| | |
|---|---|
| Name | **Correctional Sergeant Fletcher** |
| Job or Title<br>(if known) | **Correctional Sergeant, Everglades Correctional Institution** |
| Shield Number | **Unknown** |
| Employer | **Florida Department of Corrections** |
| Address | **1599 S.W. 187th Avenue** |
| | **Miami, Florida 33194** |

☒ Individual Capacity   ☐ Official Capacity

**Defendant No. 7**

| | |
|---|---|
| Name | **Inspector General Rios** |
| Job or Title<br>(if known) | **Inspector** |
| Shield Number | **Unknown** |
| Employer | **Inspector General's Office** |
| Address | **501 South Calhoun Street, Suite 135** |
| | **Tallahassee, Florida 32399** |

☒ Individual Capacity   ☐ Official Capacity

**Defendant No. 8**

| | |
|---|---|
| Name | **Inspector General Joe Montenegro** |
| Job or Title<br>(if known) | **Inspector** |
| Shield Number | **Unknown** |
| Employer | **Inspector General's Office** |
| Address | **501 South Calhoun Street, Suite 135** |
| | **Tallahassee, Florida 32399** |

☒ Individual Capacity   ☐ Official Capacity

## II.     Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.  Are you bringing suit against (*check all that apply*):
    ☐ Federal officials (a *Bivens* claim)
    ☒ State or local officials (a § 1983 claim)

B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws.]" 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
    1.)  Fifth Amendment,
    2.)  Eighth Amendment,
    3.)  Fourteenth Amendment,
    4.)  First Amendment,
    5.)  Florida Statutes § 20.315,
    6.)  Florida Statutes § 944.09,
    7.)  Florida Statutes § 945.025,
    8.)  Florida Statutes § 895.01,
    9.)  Florida Statutes § 895.02,
    10.)  Florida Statutes § 895.03,
    11.)  Florida Statutes § 895.04,
    12.)  Florida Statutes § 895.05,
    13.)  Florida Statutes § 895.06,
    14.)  Chapter 33-208.002(1), Fla. Admin. C.

C.  Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?
    N/A

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens,* explain how each defendant acted under color of federal law. Attach additional pages if needed.
    1.)  Defendant Julie Jones as the Secretary of the F.D.C. is tasked with the care, custody, and control of the inmates committed to Defendant's custody by a court of competent jurisdiction's order of incarceration (hereinafter Defendant Jones). Defendant Julie Jones received numerous letters from Plaintiff that detailed the wrongful acts of several of the Defendants in this case and she failed to act appropriately or in any way to protect Plaintiff or any other inmate housed at Everglades C.I. It is

Defendant Julie Jones duty as the Secretary of the Florida Department of Corrections to investigate allegations made by inmates especially when the inmate also alleges that he can provide to the Defendant the firearms, C-4, and GPS activated cellular telephones to prove his allegations;

2.) Defendant Warden Acosta is the Warden of Everglades C.I. and is tasked by state and federal law for the care, custody, and control of inmates within his immediate custody (hereinafter Defendant Acosta). Defendant Warden Acosta is required to ensure the care, custody, and control of the inmates committed to his care at the institution he is the Warden of. Defendant Warden Acosta is responsible thereby with the protection, health, and welfare of the inmates under his authority;

3.) Defendant Assistant Warden Scott is the Assistant Warden of Everglades C.I. and is tasked by federal and state law for the care, custody, and control of inmates within their custody (hereinafter Defendant Scott). Defendant Assistant Warden Scott is required to ensure the care, custody, and control of the inmates committed to their care at the institution Defendant Scott works at. Defendant Assistant Warden Scott is responsible thereby with the protection, health, and welfare of the inmates under their authority;

4.) Defendant Correctional Officer Mesa is a correctional officer at Everglades C.I. and is tasked by state law for the care, custody, and control of inmates within his custody (hereinafter Defendant Mesa). Defendant Correctional Officer Mesa is required to ensure the care, custody, and control of the inmates committed to his care at the institution where he is employed. Defendant Correctional Officer Mesa is responsible thereby with the protection, health, and welfare of the inmates under his authority;

5.) Defendant Correctional Sergeant Bethel is a correctional officer sergeant employed at Everglades C.I. and is tasked by federal and state law for the care, custody, and control of inmates within his custody (hereinafter Defendant Bethel). Defendant Bethel is required to ensure the care, custody, and control of the inmates committed to his care at the institution where he is employed. Defendant Bethel is responsible thereby with the protection, health, and welfare of the inmates under his authority;

6.) Defendant Correctional Sergeant Fletcher is a correctional officer sergeant employed at Everglades C.I. and is tasked by federal and state law for the care, custody, and control of inmates within his custody (hereinafter Defendant Fletcher). Defendant Fletcher is required to ensure the care, custody, and control of the inmates committed to his care at the institution where he is employed. Defendant Fletcher is responsible thereby with the protection, health, and welfare of the inmates under his authority;

7.) Defendant Inspector Rios is an inspector employed by the F.D.C. Inspector General's Office and is tasked with the investigation of wrongdoing by F.D.C. staff that is revealed through complaints by inmates

or their families. Defendant Inspector Rios (hereinafter Defendant Rios) is required by state law to investigate and take seriously allegations of the introduction of weapons and explosives on property used by F.D.C. Defendant Rios is prohibited by state and federal law from threatening Plaintiff for any action taken by Plaintiff to preserve his safety;

8.)   Defendant Inspector Joe Montenegro is an inspector employed by the F.D.C. Inspector General's Office and is tasked with the investigation of wrongdoing by F.D.C. staff that is revealed through complaints by inmates or their families. Defendant Inspector Joe Montenegro (hereinafter Defendant Montenegro) is required by state law to investigate and take seriously allegations of the introduction of weapons and explosives on property used by F.D.C. Defendant Montenegro is prohibited by state and federal law from threatening Plaintiff for any action taken by Plaintiff to preserve his safety or interfering with Plaintiff ability to establish his complaints by the removal/theft of Plaintiff's personal property containing the serial numbers to the weapons Defendants Fletcher, Mesa, and Bethel smuggled onto Everglades C.I. compound;

## III.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows (*check all that apply*):

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☒ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other (*explain*) _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.
N/A

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.
Everglades Correctional Institution between April 2016 and February 2017

C.   What date and approximate time did the events giving rise to your claim(s) occur? <u>From April 2016 to February 25, 2017</u>

D.   What are the facts underlying your claim(s)? (*For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?*)

## I.

**EIGHTH AMENDMENT VIOLATION/ FAILURE TO PROTECT INMATES HOUSED AT EVERGLADES CORRECTIONAL INSTITUTION/ DEFENDANTS JONES, ACOSTA, AND SCOTT.**

1.)   In April of 2016, Plaintiff was present when Defendant Bethel sold to several inmates firearms on Everglades Correctional Institution property;

2.)   After observing this sell, Plaintiff requested to speak with Defendant Acosta about an institutional emergency by submitting a request to him through normal request channels;

3.)   Plaintiff received no response to the request sent to Defendant Acosta;

4.)   Plaintiff then observed Defendant Acosta while Plaintiff was proceeding to a callout to medical;

5.)   Plaintiff addressed Defendant Acosta at that time and informed him that Plaintiff needed to speak with him alone and informed Defendant Acosta that Plaintiff previously sent him a request;

6.)   Defendant Acosta stated that he did not have time to speak with Plaintiff at that time but submit another request and Defendant Acosta would place Plaintiff on the callout to speak with him;

7.)   Plaintiff reiterated that the subject was a very serious matter;

8.)   Plaintiff never received a callout to speak with Defendant Acosta;

9.)   Plaintiff continued to submit repeated requests to speak with Defendant Acosta about the issue regarding Defendant Bethel selling firearms to inmates at Everglades C.I.;

10.)   Plaintiff additionally submitted multiple informal and formal grievances regarding this issue;

11.)   Plaintiff never received a response to any of the grievances but did have the grievance log numbers;

12.)   On November 8, 2016, Plaintiff was again present during another transaction with inmates receiving and purchasing firearms, a GPS cell phone, and 8 TEXTER Rx Unit Boxes of C-4;

13.)   Defendants Fletcher and Mesa delivered them;

14.)   Three days later, Plaintiff received a visit from his family;

15.)   Plaintiff informed his daughter that Plaintiff was in a dangerous situation;

16.) Post visit, Plaintiff went back to the compound and retrieved the two firearms, 8 boxes of C-4, and the GPS cell phone;

17.) Upon retrieving these items, Plaintiff hid the items;

18.) Plaintiff then spoke with a friend of his that is on the street and had him activate the GPS cell phone so he could know where it was at all times;

19.) Thirteen days after Plaintiff hid the items, Inmate Carlos Figueroa DC# X86053 entered Plaintiff's cell — E1103 — at Everglades C.I. while Inmate Rene Carbonel was present;

20.) Inmate Carlos Figueroa DC# X86053 then informed Plaintiff that he had been contracted to kill Plaintiff and Inmate Antonio Flores DC# B08779, Plaintiff's cellmate;

21.) Inmate Carlos Figueroa DC# X86053 informed Plaintiff that Defendant Fletcher and Mesa paid him to kill Plaintiff and Inmate Antonio Flores DC# B08779, Plaintiff's cellmate;

22.) Inmate Carlos Figueroa DC# X86053 then attacked Plaintiff;

23.) Inmate Carlos Figueroa DC# X86053 stabbed Plaintiff 19 times before assistance arrived to help Plaintiff;

24.) Plaintiff sustained life threatening injuries to his torso and face;

25.) Plaintiff received several stab wounds to his facial area that rendered him blind in his left eye;

26.) Plaintiff informed numerous correctional officers at Everglades C.I. about the firearms being on the compound;

27.) While at medical being treated for the stabbing, Plaintiff informed Sergeant T. I. Thompson and Captain Johnson about the two firearms on Everglades C.I.;

28.) They informed Plaintiff that they would make an incident report about Plaintiff's allegations;

29.) On November 27, 2016, Plaintiff was in Everglades C.I.'s medical department and asked Sergeant Martel to please tell Defendant Scott that Plaintiff needed to talk to her;

30.) Sergeant Martel called Defendant Scott's office and Plaintiff and Defendant Scott spoke for a while;

31.) Plaintiff informed Defendant Scott about the two firearms being on the compound and that Plaintiff knew where they were;

32.) Plaintiff advised Defendant Scott that Plaintiff was stabbed because of him hiding the firearms;

33.) Plaintiff asked Defendant Scott if she would help Plaintiff speak with Defendant Acosta alone;

34.) Plaintiff advised Defendant Scott that Plaintiff was in fear of his life from security and inmates at Everglades C.I.;

35.)   Defendant Scott asked Plaintiff to wait until November 28, 2016, the next day, and to not say anything to anyone;

36.)   Plaintiff agreed to wait;

37.)   Plaintiff was moved to confinement the next day under protective custody;

38.)   Plaintiff was placed into the same cell with Inmate Antonio Flores;

39.)   Although Inmate Antonio Flores knew nothing of why he was under protective custody, Plaintiff refused to tell him what was occurring for his own safety;

40.)   That day, Plaintiff was taken by an officer to meet with Defendants Acosta, Scott, and another assistant warden;

41.)   Defendant Acosta stated that he did not have much time because it was his day off of work — a Monday;

42.)   Plaintiff informed them about the two firearms on Everglades C.I.'s compound;

43.)   Defendant Acosta asked Plaintiff to make a statement and to let him know what Plaintiff wanted;

44.)   Plaintiff wrote the statement as requested, requesting:
　　　(a)   To take a polygraph examination;
　　　(b)   That Plaintiff's attorney be present;
　　　(c)   When Plaintiff gives the materials to them that Plaintiff wanted his attorney and a family member present;
　　　(d)   That on the day the materials are given to them that Plaintiff and Inmate Antonio Flores be immediately transferred to South Florida Reception Center and housed there permanently in A-dormitory;
　　　(e)   Provide to Plaintiff a letter of recommendation for Plaintiff to be able to provide to his sentencing judge;
　　　(f)   Assist Inmate Antonio Flores with I.C.E.

45.)   Plaintiff never informed Defendants that Plaintiff had hidden the weapons, only that Plaintiff knew where they were;

46.)   Defendant Acosta informed Plaintiff to write everything down on paper and that he would come by to pick up the list on November 29, 2016;

47.)   Plaintiff did as instructed and had the statement prepared and ready to deliver to Defendant Acosta on November 29, 2016;

48.)   Defendant Acosta never showed up;

49.)   On November 30, 2016, Defendant Acosta walked through the confinement area and passed Plaintiff's cell door several times;

50.)   Defendant Acosta never acknowledged Plaintiff or returned to retrieve the statement;

51.)   On December 9, 2016, Plaintiff submitted an informal grievance to Defendant Scott;

52.)    Plaintiff also on the same day sent a request to Defendant Acosta letting him know that Plaintiff had ready the note and would like to give it to him personally;

53.)    At 1300 hours on December 12, 2016, Plaintiff was removed from his cell and told that Plaintiff had a legal call;

54.)    Plaintiff spoke to his attorney for about three minutes before Defendant Scott entered the room, ordered Plaintiff to get off of the phone, that the attorney call would be scheduled for another day, that Plaintiff had an emergency hospital visit to go to;

55.)    Plaintiff hung up the phone as ordered;

56.)    After Plaintiff hung up the phone, Plaintiff was escorted to his cell in confinement and never taken to any hospital visit as alleged;

57.)    Once Plaintiff returned to his cell, Inmate Flores was nervous;

58.)    Inmate Flores was informed by Sergeant Johnson to pack his property because Inmate Flores was being moved back to open population;

59.)    Inmate Flores refused to be placed back into open population;

60.)    Plaintiff immediately filed a formal grievance and sent a letter to Defendant Julie Jones and the Inspector General's Office;

61.)    Plaintiff also filed another grievance to Defendant Acosta;

62.)    Plaintiff never received any responses from the grievances but was issued grievance log numbers;

63.)    Plaintiff spoke to Captain Figueroa and Lieutenant Montenegro about these facts and both advised Plaintiff to trust no one;

64.)    Plaintiff also spoke with Sergeant Gem about these issues and Sergeant Gem told Plaintiff to trust no one;

65.)    On December 15, 2016, Sergeant Gem informs Plaintiff that he must take Inmate Flores out of protective custody and place him back into general population;

66.)    Sergeant Gem asks Plaintiff where should Inmate Flores be housed;

67.)    Plaintiff informed Sergeant Gem that Plaintiff believes that Inmate Flores would be safe if Inmate Flores was housed in C-Dormitory;

68.)    Sergeant Gem placed Inmate Flores in C-dormitory;

69.)    Sometime later, Defendant Acosta, the colonel, and Classification Supervisor Sigler talks to Plaintiff alone;

70.)    Defendant Acosta states emphatically that he does not want Plaintiff at Everglades C.I., that Plaintiff was to say nothing, and to get out Defendant Acosta's face;

71.)    Classification Supervisor Sigler and Colonel looked shocked;

72.)     Classification Supervisor Sigler advised Defendant Acosta that no adverse reports or investigations were on the computer regarding Plaintiff;

73.)     Defendant Acosta stated that he did not care, that he wanted Plaintiff out of Everglades C.I. without any comments from anyone else;

74.)     Classification Supervisor Sigler and the Colonel asked about the stabbing investigation and why Plaintiff was being transferred and Defendant Acosta ordered them to transfer Plaintiff and for Plaintiff to say nothing or Defendant Acosta would place Plaintiff in confinement under investigation forever;

75.)     Plaintiff sent a letter to Defendant Jones and to the Inspector General and another grievance to Defendant Acosta telling them that Plaintiff has the two firearms in a safe place and that is why Inmate Carlos Figueroa tried to kill Plaintiff and Inmate Flores;

76.)     Plaintiff also informed them about the GPS cell phone;

77.)     Plaintiff never stated anything about the TEXTER Rx materials;

78.)     Defendant Jones knew about the threats to security that the firearms and Defendants Mesa, Fletcher, and Bethels' actions created;

79.)     Defendant Jones was informed several times by letter from Plaintiff about the illegal activity at Everglades C.I. with these Defendants;

80.)     Defendant Acosta was informed of the illegal activities that Defendants Fletcher, Mesa, and Bethel were engaged in when Plaintiff informed him about their activities through a request, informal grievance, and formal grievance;

81.)     Defendant Scott was informed of the illegal activities that Defendants Fletcher, Mesa, and Bethel were engaged in when Plaintiff informed him about their activities through a request, informal grievance, and formal grievance;

82.)     Defendant Rios was informed of the illegal activities that Defendants Fletcher, Mesa, and Bethel were engaged in when Plaintiff informed him about their activities through a request, informal grievance, and formal grievance;

83.)     Defendant Montenegro was informed of the illegal activities that Defendants Fletcher, Mesa, and Bethel were engaged in when Plaintiff informed him about their activities through a request, informal grievance, and formal grievance;

84.)     Each of these defendants failed to do anything to protect Plaintiff or other inmates housed at Everglades C.I. from the potential threat of the firearms being on the compound and in possession of gang member inmates;

85.)     Each Defendant knew of the threat at Everglades C.I. regarding the presence of firearms in the possession of other inmates that are known for violence and disruptive behavior;

86.)     The presence of firearms and ammunition in the possession of inmates known for violence on Everglades C.I.'s property is a significant risk to all inmates housed at that location;

87.)     Such a risk is substantial and will likely result in serious harm;

88.) Defendants did not act to protect Plaintiff or any inmates housed at Everglades C.I. from the threat of serious harm from the firearms and ammunition;

89.) Defendants deliberately refused to act to protect inmates from such a threat;

90.) Defendants instead held Plaintiff incommunicado after he was attacked by another inmate;

91.) Plaintiff notified Defendants that Plaintiff had secured some of the most recently introduced firearms and ammunition in a secret hiding place but that other firearms were still on the compound and in the possession of gang members;

92.) Plaintiff informed Defendants that he was in danger from attack before the attack because he had hidden the firearms and other items before they were delivered to the inmates to whom they had been sold by Defendants Fletcher, Mesa, and Bethel;

93.) Defendants did not act to protect Plaintiff from harm;

94.) Plaintiff was subsequently attacked by an inmate and suffered 19 stab wounds to his facial area and torso;

95.) Plaintiff additionally was hospitalized and has lost his sight in his left eye;

96.) As a direct cause of Defendants Jones, Acosta, and Scotts' failure to protect Plaintiff from a known and foreseeable attack, Defendants were deliberately indifferent to Plaintiff's well being;

97.) As a direct cause of Defendants Jones, Acosta, and Scotts' inaction Plaintiff sustained life threatening wounds and has lost his sight in his left eye;

98.) At all times relevant hereto, Defendants Acosta, Scott, and Jones were acting under the color of state law;

## II.

### EIGHTH AMENDMENT VIOLATION/ FAILURE TO PROTECT/ DEFENDANTS MESA, BETHEL, AND FLETCHER.

99.) Defendants Mesa, Bethel, and Fletcher are Correctional Officers assigned to work at Everglades C.I.;

100.) Defendant Mesa is a Correctional Officer that works at Everglades C.I.;

101.) Defendant Bethel is a Correctional Officer Sergeant that works at Everglades C.I.;

102.) Defendant Fletcher is a Correctional Officer Sergeant that works at Everglades C.I.;

103.) Defendants Fletcher, Mesa, and Bethel worked together to introduce to the Everglades C.I. compound firearms, explosives, and Cellular Devices;

104.) Defendants Fletcher, Mesa, and Bethel introduced these firearms, explosives, and Cellular Device to the compound and sold these items to inmates housed at Everglades C.I.;

105.) Defendants Fletcher, Mesa, and Bethel sold these items to gang members and any other inmates that could afford to purchase these items;

106.) Defendants Fletcher, Mesa, and Bethel's act of introducing these items to the Everglades C.I. compound endangered the health and welfare of the inmates housed there;

107.) Defendants Fletcher, Mesa, and Bethel knowingly introduced these items to the compound and endangered the inmates housed there;

108.) Defendants Fletcher, Mesa, and Bethel knowingly, willfully, maliciously, and wantonly introduced these items to the prison compound and created a substantial risk of serious harm to all of the inmates housed at that institution;

109.) Defendants Fletcher, Mesa, and Bethel's actions evince a deliberate indifference to the safety of all inmates housed at Everglades C.I. including Plaintiff's;

110.) Defendants Fletcher, Mesa, and Bethel were deliberately indifferent to Plaintiff's safety;

111.) Defendants Fletcher, Mesa, and Bethels' actions created a substantial risk of serious harm to inmates by selling inmates firearms and explosives;

112.) Defendants Fletcher, Mesa, and Bethel were acting under the color of state law when selling inmates firearms, explosives, and Cellular devices at Everglades C.I.

## III.
### EIGHTH AMENDMENT VIOLATION/ INTENTIONAL ELICITATION OF HARM TO PLAINTIFF/ DEFENDANTS MESA, BETHEL, AND FLETCHER.

113.) In April of 2016, Plaintiff observed Defendant Bethel sell firearms to inmates at Everglades C.I.

114.) On November 8, 2016, Plaintiff observed Defendants Fletcher and Mesa sell firearms, ammunition, TEXTER C-4, and GPS cellular telephones to different inmates at Everglades C.I.;

115.) The last time Plaintiff observed this sell, he was able to obtain the items and hide them;

116.) Plaintiff obtained the firearms, TEXTER C-4, and GPS Cellular Telephone;

117.) Plaintiff then hid the items so that the inmates and Defendants could not locate or use the items;

118.) Thereafter, on November 24, 2016, Inmate Carlos Figueroa and entered Plaintiff's and Inmate Antonio Flores DC# B08779 cell;

119.) Inmate Carlos Figueroa stated to Plaintiff in the presence of Inmate Rene Carbonel DC# M62483 that he had been paid $2,000 by Defendants Fletcher, Bethel, and Mesa to kill Plaintiff and Inmate Antonio Flores DC# B08779;

120.) Inmate Carlos Figueroa then proceeded to stab Plaintiff 19 times;

121.) Inmate Carlos Figueroa stabbed Plaintiff multiple times in the face and torso area;

122.) Plaintiff sustained life-threatening injuries requiring immediate medical attention;

123.) Plaintiff also lost his sight in his left eye as a direct result of this attack;

124.) Defendants Fletcher, Mesa, and Bethel organized and paid for this attack against Plaintiff;

125.) As a direct cause of Defendants Fletcher, Mesa, and Bethel's actions, Plaintiff was stabbed multiple times in his torso and facial area;

126.) Defendants Fletcher, Mesa, and Bethel created a substantial risk of serious harm;

127.) Defendants Fletcher, Mesa, and Bethel were deliberately indifferent to the harm caused by their actions;

128.) Defendants Fletcher, Mesa, and Bethel acted under the color of state law at all times relevant to the instant complaint;

129.) The presence of Firearms, Ammunition, TEXTER C-4, and Cellular Devices in the possession of inmates at Everglades C.I. constitutes a substantial risk of serious harm to inmates;

130.) The presence of Firearms, Ammunition, TEXTER C-4, and Cellular Devices in the possession of inmates at Everglades C.I. constitutes a violation of the Eighth Amendment;

131.) Defendants Fletcher, Mesa, and Bethels' action of introducing such items onto the grounds of Everglades C.I. and placing the items into the hands of inmates housed there constitutes deliberate indifference to the safety and health of inmates housed there;

132.) Defendants Fletcher, Mesa, and Bethel knew that their actions would cause harm to inmates housed at Everglades C.I.;

133.) Defendants Fletcher, Mesa, and Bethel knew that by hiring Inmate Carlos Figueroa to kill or harm Plaintiff and Inmate Antonio Flores DC# B08779 that they were violating the Eighth Amendment;

134.) Defendants Fletcher, Mesa, and Bethel acted with the requisite *mens rea* to show that they engaged Inmate Carlos Figueroa to kill Plaintiff and Inmate Antonio Flores DC# B08779;

135.) Defendants Fletcher, Mesa, and Bethel did knowingly, unnecessarily, and wantonly inflict pain upon Plaintiff in violation of Plaintiff's Eighth Amendment;

## IV.
**EIGHTH AMENDMENT VIOLATION/ INTENTIONAL FRUSTRATION OF REQUIREMENT TO ENSURE SAFE ENVIRONMENT FOR PLAINTIFF/ DEFENDANTS MESA, BETHEL, AND FLETCHER.**

136.) In April of 2016, Plaintiff was present when Defendant Bethel sold to several inmates firearms on Everglades Correctional Institution property;

137.) In April of 2016, Plaintiff observed Defendant Bethel sell firearms to inmates at Everglades C.I.

138.) On November 8, 2016, Plaintiff observed Defendants Fletcher and Mesa sell firearms, ammunition, TEXTER C-4, and GPS cellular telephones to different inmates at Everglades C.I.;

139.) The last time Plaintiff observed this sell, he was able to obtain the items and hide them;

140.) Plaintiff obtained the firearms, TEXTER C-4, and GPS Cellular Telephone;

141.) Plaintiff then hid the items so that the inmates and Defendants could not locate or use the items;

142.) Thereafter, on November 24, 2016, Inmate Carlos Figueroa and entered Plaintiff's and Inmate Antonio Flores DC# B08779 cell;

143.) Inmate Carlos Figueroa stated to Plaintiff in the presence of Inmate Rene Carbonel DC# M62483 that he had been paid $2,000 by Defendants Fletcher, Bethel, and Mesa to kill Plaintiff and Inmate Antonio Flores DC# B08779;

144.) Inmate Carlos Figueroa then proceeded to stab Plaintiff 19 times;

145.) Inmate Carlos Figueroa stabbed Plaintiff multiple times in the face and torso area;

146.) Plaintiff sustained life-threatening injuries requiring immediate medical attention;

147.) Plaintiff also lost his sight in his left eye as a direct result of this attack;

148.) Defendants Fletcher, Mesa, and Bethel organized and paid for this attack against Plaintiff;

149.) Defendants Mesa, Bethel, and Fletcher intentionally introduced onto the compound of Everglades C.I. firearms, ammunition, explosives, and cellular devices;

150.) After intentionally introducing the firearms, ammunition, explosives, and cellular devices, Defendants Mesa, Bethel, and Fletcher then sold these items to inmates housed at Everglades C.I.;

151.) Most of the inmates that were purchasing firearms, ammunition, explosives, and cellular devices belonged to gangs;

152.) Defendants Mesa, Bethel, and Fletchers intentionally created an environment that is hostile towards other inmates and Plaintiff;

153.) Defendants Mesa, Bethel, and Fletchers intentionally frustrated Defendant F.D.C.'s Constitutional obligation to provide Plaintiff with a safe environment;

154.) Defendants Mesa, Bethel, and Fletcher were all acting under the color of state law at all times material hereto;

155.) Defendants Mesa, Bethel, and Fletcher are liable under Plaintiff's Eighth Amendment for Intentionally creating an unsafe environment for Plaintiff;

## V.

**GROSS NEGLIGENCE/TAMPERING WITH A WITNESS/ DEFENDANTS MESA, BETHEL, FLETCHER, RIOS, AND MONTENEGRO.**

156.)   In April of 2016, Plaintiff was present when Defendant Bethel sold to several inmates firearms on Everglades Correctional Institution property;

157.)   In April of 2016, Plaintiff observed Defendant Bethel sell firearms to inmates at Everglades C.I.

158.)   On November 8, 2016, Plaintiff observed Defendants Fletcher and Mesa sell firearms, ammunition, TEXTER C-4, and GPS cellular telephones to different inmates at Everglades C.I.;

159.)   The last time Plaintiff observed this sell, he was able to obtain the items and hide them;

160.)   Plaintiff obtained the firearms, TEXTER C-4, and GPS Cellular Telephone;

161.)   Plaintiff then hid the items so that the inmates and Defendants could not locate or use the items;

162.)   Thereafter, on November 24, 2016, Inmate Carlos Figueroa and entered Plaintiff's and Inmate Antonio Flores DC# B08779 cell;

163.)   Inmate Carlos Figueroa stated to Plaintiff in the presence of Inmate Rene Carbonel DC# M62483 that he had been paid $2,000 by Defendants Fletcher, Bethel, and Mesa to kill Plaintiff and Inmate Antonio Flores DC# B08779;

164.)   Inmate Carlos Figueroa then proceeded to stab Plaintiff 19 times;

165.)   Inmate Carlos Figueroa stabbed Plaintiff multiple times in the face and torso area;

166.)   Plaintiff sustained life-threatening injuries requiring immediate medical attention;

167.)   Plaintiff also lost his sight in his left eye as a direct result of this attack;

168.)   Defendants Fletcher, Mesa, and Bethel organized and paid for this attack against Plaintiff;

169.)   Defendants Mesa, Bethel, and Fletcher knew that Plaintiff was the person that observed them delivery firearms, explosives, and cellular devices to various inmates at Everglades C.I.;

170.)   Defendants Mesa, Bethel, and Fletcher knew that Plaintiff was the person that grabbed the firearms, explosives, and Cellular device that they intended to sell to various inmates at Everglades C.I.;

171.)   Defendants Mesa, Bethel, and Fletcher hired Inmate Carlos Figueroa to kill Plaintiff and Inmate Antonio Flores DC# B08779 for taking the firearms, explosives, and Cellular Device;

172.)   Defendants Mesa, Bethel, and Fletcher paid Inmate Carlos Figueroa to kill Plaintiff and Inmate Antonio Flores DC# B08779;

173.) Defendants Mesa, Bethel, and Fletcher did knowingly use intimidation and physical force through the solicitation of another to keep Plaintiff from divulging any information about the firearms, explosives, and Cellular Devices in any official proceeding;

174.) Defendants Mesa, Bethel, and Fletcher did knowingly use intimidation and physical force through the solicitation of another to keep Plaintiff from divulging any information about the firearms, explosives, and Cellular Devices to a law enforcement officer relating to the commission of an offense;

175.) Such actions by Defendants Mesa, Bethel, and Fletcher constitute the state law violation of tampering with a witness;

## VI.
### GROSS NEGLIGENCE/TAMPERING WITH A WITNESS/ DEFENDANT RIOS.

176.) Defendant Rios met Plaintiff while Plaintiff was being escorted through the center gate to speak with the FDLE regarding Defendants Mesa, Fletcher, and Bethel's selling guns and explosives to inmates housed at Everglades C.I.;

177.) Defendant Rios verbally threatened to confine Plaintiff in confinement under investigation for more than six months under investigation;

178.) Defendant Rios verbally threatened Plaintiff to transfer him to somewhere else far from his family if Plaintiff said anything to anyone adverse about Everglades C.I.;

179.) Plaintiff was then escorted to the administration building where Plaintiff was met by the Florida Department of Law Enforcement in regards to Plaintiff's prior complaints about there being firearms and explosives on the Everglades C.I. compound;

180.) Plaintiff averred that he did not know what they were talking about;

181.) Plaintiff repeatedly stated that Plaintiff did not know anything about any guns or explosives or cell phones at Everglades C.I.;

182.) FDLE subsequently left;

183.) Defendant Rios met Plaintiff later and confirmed that Defendant Rios was pleased with Plaintiff's responses to FDLE;

184.) Defendant Rios did knowingly use intimidation to keep Plaintiff from divulging any information about the firearms, explosives, and Cellular Devices in any official proceeding;

185.) Defendant Rios did knowingly use intimidation to keep Plaintiff from divulging any information about the firearms, explosives, and Cellular Devices to a law enforcement officer relating to the commission of an offense;

186.) Such actions by Defendant Rios constitute the state law violation of tampering with a witness;

187.) Defendant Rios was acting under the color of state law at all times material hereto;

## VII.

**GROSS NEGLIGENCE/ TAMPERING WITH A WITNESS/ DEFENDANT MONTENEGRO.**

188.) On or about July of 2016, FBI agents came to see Plaintiff to talk about the firearms, explosives, and cellular devices;

189.) Defendant Montenegro intentionally deprived Plaintiff of that meeting;

190.) Defendant Montenegro intentionally did not let Plaintiff speak to the FBI agents;

191.) Defendant Montenegro stated that he did not know what had happened;

192.) Defendant Montenegro did however threaten to place Plaintiff in confinement under investigation for six months and then transfer Plaintiff far from his family if Plaintiff spoke to the FBI about his allegations against Defendants Mesa, Fletcher, and Bethel;

193.) On December 28, 2016, at about 1400 hours, Defendant Montenegro spoke with Plaintiff;

194.) Defendant Montenegro informs Plaintiff that he is not leaving until Plaintiff gives him the two firearms;

195.) Plaintiff refused to do so unless they agree to help Plaintiff and his friend Antonio Flores;

196.) Defendant Montenegro called Plaintiff's attorney that is not a criminal lawyer but is Plaintiff's friend;

197.) Defendant Montenegro places her on the speaker phone and tells her what Plaintiff has hidden and what happened;

198.) Plaintiff's lawyer friend asked Plaintiff about it and what Plaintiff wanted;

199.) Plaintiff told her that Plaintiff had already put what he wanted on paper and given it to them;

200.) Plaintiff's lawyer friend said it was impossible for her to come out that day but asked if they could wait until next week;

201.) Defendant Montenegro agreed;

202.) Defendant Montenegro then called Plaintiff's sister, Milady Iglesisas, and put her on the speaker phone;

203.) Defendant Montenegro told her what happened and about what Plaintiff had hidden;

204.) She responded that it was now clear and that they must get Plaintiff and Antonio Flores out of Everglades C.I.;

205.) Defendant Montenegro told her to tell Plaintiff to give up the two firearms;

206.) Plaintiff told them what he wanted in exchange;

207.) Defendant Montenegro agreed;

208.) The next day, they moved Plaintiff out of Everglades C.I. but not Flores;

209.) On December 29, 2016, Plaintiff was housed at South Florida Reception Center;

210.) Plaintiff was taken out to speak with Defendant Montenegro;

211.) During this meeting, Defendant Montenegro asked Plaintiff if Plaintiff had the serial numbers to the firearms that Plaintiff had hidden;

212.) Plaintiff advised that he did;

213.) Defendant Montenegro then ordered the officer standing there to retrieve Plaintiff's property and send it to the inspector general's office;

214.) Plaintiff was then sent back to confinement;

215.) Defendant Montenegro did knowingly use intimidation to keep Plaintiff from divulging any information about the firearms, explosives, and Cellular Devices in any official proceeding;

216.) Defendant Montenegro did knowingly use intimidation through the confiscation of his property to keep Plaintiff from divulging any information about the firearms, explosives, and Cellular Devices to a law enforcement officer relating to the commission of an offense;

217.) Such actions by Defendant Montenegro constitute the state law violation of tampering with a witness;

218.) Such actions by Defendant Montenegro deprived and continues to deprive the serial numbers and notes about actions by others that are material to this suit;

## VIII.
### Gross Negligence/ Introduction of Firearms and Explosives to a Correctional Facility/ Defendants Bethel, Mesa, and Fletcher.

219.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher were all acting under the color of state law as employees of Defendant F.D.C.;

220.) Defendants Bethel, Mesa, and Fletcher introduced onto the property of Everglades C.I. firearms and ammunition in April of 2016;

221.) Defendants Bethel, Mesa, and Fletcher sold these firearms to inmates housed at Everglades C.I. after they brought the firearms onto the property of Everglades C.I.;

222.) The inmates that Defendants Bethel, Mesa, and Fletcher sold the items to were gang-affiliated members;

223.) On November 8, 2016, Defendants Bethel, Mesa, and Fletcher again introduced firearms, explosives, and cellular devices onto the property of Everglades C.I.;

224.) Defendants Mesa and Fletcher introduced onto Everglades C.I. property two firearms, eight boxes of TEXTER Rx C-4 explosives, and one GPS cellular telephone;

225.) Defendants Mesa and Fletcher sold these items to gang-affiliated inmates housed at Everglades C.I.;

226.) It constitutes a Second Degree Felony in the State of Florida for the introduction of firearms, weapons, or explosives into a correctional facility[1];

227.) Plaintiff saw the transaction occur between Defendants Mesa and Fletcher and other inmates;

228.) Plaintiff observed where the firearms, C-4, and Cellular Device was being hidden;

229.) On November 11, 2016, after visitation with Plaintiff's family, Plaintiff went to the area where the firearms, C-4, and Cellular device was being hidden;

230.) Plaintiff entered the area and took possession of the firearms, ammunition, C-4, and Cellular device;

231.) Plaintiff took these items and hid them in a place that was inaccessible to all inmates;

232.) Plaintiff retrieved the cellular devices GPS tracking information and provided this to Plaintiff's friend that was free and asked them to maintain tracking of the items;

233.) Plaintiff sent requests and letters to Defendants Acosta, Scott, and F.D.C. about these transactions;

234.) As a causal connection of Defendants Mesa and Fletchers' actions, Plaintiff was attacked and stabbed 19 times;

235.) Plaintiff received multiple stab wounds to his facial, head, and torso regions;

236.) As a direct result of these stab wounds inflicted at the behest of Defendants Bethel, Mesa, and Fletcher, Plaintiff lost his sight in his left eye and was critically wounded;

237.) As a direct result of Defendants Bethel, Mesa, and Fletchers' actions, they are guilty of introducing firearms, weapons, explosives, and cellular devices into a correctional institution;

238.) As a direct result of Defendants Bethel, Mesa, and Fletchers' actions, they should be punished in accordance with Florida Law.

## IX.

### RETALIATION AGAINST A WITNESS, VICTIM, OR INFORMANT/ DEFENDANTS BETHEL, MESA, AND FLETCHER.

239.) In April of 2016, Plaintiff observed Defendant Bethel sell to numerous inmates at Everglades C.I. multiple inmates multiple firearms;

240.) Plaintiff requested multiple times to speak to Defendant Acosta about an institutional emergency;

---

[1] See §944.47(1)(a)5, Fla. Stat. (2016).

241.) Defendant Acosta never replied to Plaintiff's requests;

242.) On November 8, 2016, Plaintiff witnessed a sale of firearms, explosives, and Cellular devices to gang-affiliated inmates at Everglades C.I. by Defendants Mesa and Fletcher;

243.) Plaintiff observed where the firearms, C-4, and Cellular Device was being hidden;

244.) On November 11, 2016, after visitation with Plaintiff's family, Plaintiff went to the area where the firearms, C-4, and Cellular device was being hidden;

245.) Plaintiff entered the area and took possession of the firearms, ammunition, C-4, and Cellular device;

246.) Plaintiff took these items and hid them in a place that was inaccessible to all inmates;

247.) Plaintiff retrieved the cellular devices GPS tracking information and provided this to Plaintiff's friend that was free and asked them to maintain tracking of the items;

248.) Plaintiff sent requests and letters to the Defendants Acosta, Scott, and F.D.C. about these transactions;

249.) Since Plaintiff observed the sell, Defendants Mesa, Fletcher, and Bethel knew that Plaintiff was the one that removed the contraband items from their storage space;

250.) Defendants Mesa, Fletcher, and Bethel further knew that Plaintiff had hidden the items in a place they would likely not look;

251.) Defendants Mesa, Fletcher, and Bethel also knew that Plaintiff had attempted to speak with Defendants Acosta, Scott, Jones, and the FDLE as well as other officers about these incidents;

252.) Defendants Mesa, Fletcher, and Bethel sought to silence Plaintiff's continued prosecution of the incidents before someone that listened would be informed;

253.) Defendants Mesa, Fletcher, and Bethel contacted Inmate Carlos Figueroa and offered to pay him to kill Plaintiff and his cellmate;

254.) Inmate Carlos Figueroa accepted the "hit";

255.) As a direct cause of Defendants Mesa and Fletchers' actions, Plaintiff was attacked and stabbed 19 times by Inmate Carlos Figueroa;

256.) Plaintiff received multiple stab wounds to his facial, head, and torso regions;

257.) As a direct result of these stab wounds inflicted at the behest of Defendants Bethel, Mesa, and Fletcher, Plaintiff lost his sight in his left eye and was critically wounded;

258.) As a direct result of Defendants Bethel, Mesa, and Fletchers' actions, they are guilty of retaliating against a witness, victim, or informant contrary to §914.23, Fla. Stat. (2016);

## X.

**RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION/ DEFENDANTS BETHEL, MESA, AND FLETCHER.[2]**

259.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher were employees of Defendant Jones;

260.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher were in a position of supervisory authority over Plaintiff and other inmates housed at Everglades C.I.;

261.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher were a member of a criminal enterprise;

262.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher were engaged in an informal or formal organization to provide for sale firearms, ammunition, explosives, and Cellular devices to inmates at Everglades C.I.;

263.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher made money by engaging in this criminal enterprise;

264.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher operated as a cohesive unit where they would cover for each other and when one could not make it the other ones would appear for the ones that could not make it;

265.) At all times material hereto, from April of 2016 to November 8, 2016, Defendants Bethel, Mesa, and Fletcher engaged in multiple acts constituting a pattern of racketeering activity;

266.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher engaged in continuing acts dealing with explosives and firearms being introduced onto the grounds of a correctional facility to hiring a "hitman" to murder Plaintiff to selling and equipping gang members with firearms and explosives to retaliating against Plaintiff for being a witness and informant;

267.) At all times material hereto, Defendants Bethel, Mesa, and Fletcher engaged in a criminal enterprise the nature of the operation that they are a part of or encompass proves the threat of continued criminal activity if not stopped;

268.) As a direct cause of Defendants Bethel, Mesa, and Fletchers' actions, Plaintiff has suffered extensively;

269.) As a direct cause of Defendants Bethel, Mesa, and Fletchers' actions, Plaintiff was retaliated against and threatened repeatedly;

270.) As a direct cause of Defendants Bethel, Mesa, and Fletchers' actions, Plaintiff was critically wounded and has lost his sight in his left eye;

271.) As a direct cause of Defendants Bethel, Mesa, and Fletchers' actions, Plaintiff has been denied the safe and humane prison environment required by federal law;

---

[2] Civil Racketeering Influence and Corrupt Organization Act §772.103, Fla. Stat. (2016)

272.) As a direct cause of Defendants Bethel, Mesa, and Fletchers' actions, Defendants Bethel, Mesa, and Fletcher has and continues to engage in a pattern of racketeering conduct that jeopardize the safety and security of all inmates housed at Everglades C.I.;

273.) As a direct cause of Defendants' actions, Plaintiff is entitled to judgment against Defendants Bethel, Mesa, and Fletcher for compensatory, nominal, and punitive damages.

## V.      Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.
Stabbed 19 times by an inmate, blind in left eye because of facial stabbing, severe trauma, mental and emotional distress.

## VI.      Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite cases or statutes. If requesting money damages, include the amount of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

1.) Compensatory, Nominal, and Punitive damages for physical injuries and permanent blindness in left eye in the amount of $2,000,000;

2.) Injunctive relief, to wit: to incarcerate Antonio Flores and Plaintiff in the custody of Krome Processing Facility located at: 18201 S.W. 12th, Miami, Florida 33194 or Metro West Detention Center located at: 13850 N.W. 41st, Doral, Florida 33178, to serve out the remainder of their sentences; To GETHER Same Dorm Same DoRm Same Room

3.) Florida Department of Corrections to pay for all medical and psychological problems incurred now and in the future from these acts;

4.) Firing of all incident-based Defendants;

5.) Denial of Work Related Benefits;

6.) Confiscation of all property obtained through illegal activities;

7.) Reprimand of all peripherally-related Defendants for failing to act appropriately regarding the facts of the case.

## VII.      Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A.      Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes
☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).
Everglades C.I., South Florida Reception Center

B.     Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?
☒ Yes
☐ No
☐ Do not know

C.     Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?
☒ Yes
☐ No
☐ Do not know

If yes, which claim(s)?
All claims alleged herein were exhausted properly according to the grievance procedures.

D.     Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?
☒ Yes
☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?
☐ Yes
☐ No

E.     If you did file a grievance:

1.     Where did you file the grievance?
Everglades C.I., Hamilton C.I., Apalachee C.I.

2.     What did you claim in your grievance?
That Defendants hired an inmate to kill Plaintiff and then confiscated all of Plaintiff's property to keep Plaintiff from having any legal documentation to prove his claims, that Defendants retaliated against Plaintiff by transferring him far from his family and repeatedly threatened Plaintiff. Plaintiff additionally grieved that Defendants were selling firearms, explosives, and cellular telephones at Everglades C.I. and by

doing so were creating a hostile, unsafe environment for Plaintiff and other inmates.

3.   What was the result, if any?
     Denied.

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (*Describe all efforts to appeal to the highest level of the grievance process.*)
     Appealed all grievance to the secretary of the F.D.C. as required.

F.   If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:
     N/A

2.   If you did not file a grievance but you did inform officials of your claims, state who you informed, when and how, and their response, if any:
     N/A

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.
     Plaintiff received several filing numbers from the grievances but all such records were confiscated from Plaintiff when Inspector Montenegro ordered Plaintiff's property to removed.
     *(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?
☐   Yes
☒   No

If so, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?
☐    Yes
☒    No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
Plaintiff(s)    _____
Defendant(s)    _____

2.    Court *(if federal court, name the district; if state court, name the county and State*
_____

3.    Docket or index number
_____

4.    Name of Judge assigned to your case
_____

5.    Approximate date of filing lawsuit
_____

6.    Is the case still pending?
☐    Yes
☐    No

If no, give the approximate date of disposition. _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*
_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐    Yes
☒    No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
Plaintiff(s)    _____

Defendant(s)   _____

2.      Court *(if federal court, name the district; if state court, name the county and State*

_____

3.      Docket or index number

_____

4.      Name of Judge assigned to your case

_____

5.      Approximate date of filing lawsuit

_____

6.      Is the case still pending?
☐     Yes
☐     No

If no, give the approximate date of disposition. _____

7.      What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

## IX.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 7- 25- 17

Signature of Plaintiff
Printed Name of Plaintiff      Norberto Iglesias
Prison Identification #      K01091

Prison Address                **Century Correctional Institution**
                              **400 Tedder Road**
                              **Century, Florida 32535**

**B.**     **For Attorneys**

           Date of signing: _____, 20__
           Signature of Attorney          _____
           Printed Name of Attorney       _____
           Bar Number                     _____
           Name of Law Firm               _____
           Address                        _____
           Telephone Number               _____
           E-mail Address                 _____

Iglesias Norberto De Koloji
Century Correctional International
400 Tedder Rd
Century Fl 32535

Southern District Court of Flor
Office of The Clerk Roch 8th of
400 North Miami Avenue
Miami Florida 33128


US INSPECTED

PROVIDED TO
CENTURY CI

JUL 25 2017

FOR MAILING
RECEIVED BY